**CORRECTED**

# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-1708V
UNPUBLISHED

| | |
|---|---|
| CLIFFORD GRAY,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: September 12, 2022<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Amy A. Senerth*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Terrence Kevin Mangan, Jr.*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING DAMAGES**[1]

On November 30, 2020, Clifford Gray filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged the Table claim that he suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving the influenza vaccine on November 12, 2019. Petition at 1, ¶ 2. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although a ruling on entitlement in Petitioner's favor was issued in May 2022, the parties have been unable to resolve damages on their own.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$112,556.68**, **representing $110,000.00 for actual pain and suffering, plus $2,556.68 for actual/unreimbursed expenses**. **I do not find that Petitioner is entitled to an award for future pain and suffering.**

**I.   Relevant Procedural History**

Along with his petition, Mr. Gray filed the medical records required under the Vaccine Act. Exhibits 1-6; *see* Section 11(c). Approximately two months thereafter, he filed the required affidavit. Exhibit 7, filed Jan. 18, 2021, ECF No. 8; Section 11(c). On February 19, 2021, the case was activated and assigned to the SPU (OSM's adjudicatory system for attempting to resolve cases deemed likely to settle). ECF No. 9.

While awaiting Respondent's tentative position, Petitioner filed updated medical records. Exhibit 8-11, ECF Nos. 13, 19. On April 21, 2022, Respondent filed his Rule 4(c) Report conceding Petitioner was entitled to compensation, and I issued a Ruling on Entitlement approximately thirteen days later. ECF Nos. 25, 27. During this same time, the parties informed me they had reached an impasse in their damages discussions. Status Report, filed May 2, 2022, ECF No. 26.

During the subsequent three-month period, Petitioner filed his supplemental affidavit, and the parties filed their damages briefs. Respondent's Brief in Support of Damages ("Opp."), filed July 5, 2022, ECF No. 29; Exhibit 12, filed Aug. 4, 2022, ECF No. 32; Petitioner's Brief in Support of a Damages Decision ("Brief"), Aug. 12, 2022, ECF No. 33. The matter is now ripe for adjudication.

**II.   Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[3] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

---

[3] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

3

### III.     Prior SIRVA Compensation Within SPU[4]

#### A.     Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2022, 2,723 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 2,651 of these cases, with the remaining 72 cases dismissed.

Of the compensated cases, 1,513 SPU SIRVA cases involved a prior ruling that petitioner was entitled to compensation. In only 114 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[5]

1,371 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 28 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (emphasis in original).

The remaining 1,138 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do

---

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] *See, e.g., Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

|  | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[6] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *114* | *1,371* | *28* | *1,138* |
| **Lowest** | $40,757.91 | $25,000.00 | $45,000.00 | $5,000.00 |
| **1st Quartile** | $72,354.81 | $67,472.00 | $90,000.00 | $40,000.00 |
| **Median** | **$102,479.12** | **$86,927.85** | **$122,886.42** | **$60,000.00** |
| **3rd Quartile** | $125,343.45 | $115,000.00 | $161,001.79 | $115,000.00 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 114 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $100,000.00 as the median amount. Only five of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[7]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). Only one required surgery. Except in one case with an award for pain and suffering slightly below the median amount, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging

---

[6] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[7] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

5

approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive. Only one petitioner provided evidence of an ongoing SIRVA, and it was expected to resolve within the subsequent year.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions, a PT duration of more than three years, and multiple cortisone injections, were required in these cases. In four cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

### IV. The Parties' Arguments

The parties agree Petitioner should be awarded $2,556.68 for past unreimbursed expenses. Brief at 10; Opp. at 2 n.1. Thus, the only area of disagreement is the amount to be awarded for Petitioner's pain and suffering. Petitioner seeks $130,000.00, plus $5,000.00 for future pain and suffering, reduced to net present value using a one percent discount rate. Brief at 1, 10. In contrast, Respondent argues for an award of only $72,500.00, with no future component. Opp. at 2, 9.

Emphasizing the high pain levels he reported during PT both prior to and after surgery, Petitioner characterizes his SIRVA injury as severe. Brief at 7-8. Although he acknowledges that he completed treatment eleven months post-vaccination, he maintains that he suffered continued ROM and pain beyond that point, and thus, is entitled to a future pain and suffering award. *Id.* at 7, 10. He compares his case favorably with surgical cases, *Smith* and *Nute*, involving pain and suffering awards of $125,000.00.[8] Brief at 8-9. He also equates his circumstances to those of the petitioner in *Hooper*, who received $185,000.00 for his pain and suffering.[9] Brief at 9.

To support his characterization of a milder SIRVA injury, Respondent stresses Petitioner's 52-day delay in seeking treatment, his near full ROM exhibited at the PT

---

[8] *Smith v. Sec'y of Health & Hum. Servs.,* No. 19-0745V, 2021 WL 2652688 (Fed. CL. Spec. Mstr. May 28, 2021); *Nute v. Sec'y of Health & Hum. Servs.,* No. 18-0140V, 2019 WL 6125008 (Fed. Cl. Spec. Mstr. Sept. 6, 2019).

[9] *Hooper v. Sec'y of Health & Hum. Servs.,* No. 17-0012V, 2019 WL 1561519 (Fed. Cl. Spec. Mstr. Mar. 20, 2019).

evaluation, and the relatively benign MRI findings. Opp. at 6-7. Respondent favorably compares the facts and circumstances in this case with those suffered by the petitioners in *Hunt* and *Shelton*, two surgical cases with lower pain and suffering awards - $95,000.00 and $97,500.00, respectively.[10]

In addition to his case-specific arguments, Respondent addresses several overall points. Respondent denies that the fact that Petitioner underwent arthroscopic surgery to treat his SIRVA injury justifies a higher pain and suffering award. Opp. at 7, 8 n.3. He "submits that the Court has applied in the past an undue premium on the mere occurrence of arthroscopic surgery in a case, setting an unduly high baseline for arthroscopic surgery cases." *Id.* at 8 n.3. Additionally, he asserts that his proffered amounts represent the full damages that should be awarded, and thus any deviation from this amount encourages petitioners to decline Respondent's full value proffers and instead demand damages briefing – creating more work and driving up the amount of attorney's fees reimbursed by the Vaccine Program. *Id.* at 9 n.4. Due to his belief that Program awards are unreasonably inflated, he proposes that awards from other fora around the U.S. also should be considered. *Id.* at 5-6 n.2.

## V.   Appropriate Compensation for Petitioner's Pain and Suffering

### A.   General Guidance for Analysis

Respondent is correct that that an award of at least $100,000.00 is not automatically appropriate for all SIRVA injuries simply because arthroscopic surgery was involved. In fact, I have awarded *less* than this amount in several cases featuring surgery. *See,* e.g., *Shelton,* 2021 WL 2550093, at *1, 9; *Hunt,* 2022 WL 2826662, at *1, 10 (the two comparable cases cited by Respondent). At the same time, however, the need for such surgery to alleviate SIRVA symptoms is a clear measure of the degree of pain and suffering – distinguishing such a case from one where conservative or more limited treatments could be effective. In addition, Program goals are generally served by creation of a few foundational rubrics that can be easily applied when faced with pain and suffering disputes – a common disagreement that too often obstructs the speedy resolution of far too many SIRVA cases. Thus, it is not unreasonable to employ a baseline six-figure "yardstick" to SIRVA pain and suffering demands in cases involving surgery (although it remains rebuttable).

In addition, Respondent's arguments about the meaningful nature of proffers

---

[10] *Hunt v. Sec'y of Health & Hum. Servs.*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022); *Shelton v. Sec'y of Health & Hum. Servs.,* No. 19-0279V, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021).

generally is unpersuasive. I have in fact previously rejected Respondent's argument that the amounts awarded in proffered cases are a more accurate gauge of the appropriate amount to be awarded than reasoned decisions from the special masters. *Sakovits*, 2020 WL 3729420, at *4. While "settled cases and proffers provide *some* evidence of the kinds of awards received overall in comparable cases," they do not reflect the kind of analysis and weighing of evidence performed by special masters in deciding disputed damages components – and hence are inherently less valuable as guidance. *Id.* (emphasis in original). Of course, the data from these decisions can be a helpful gauge of the compensation being awarded in SPU SIRVA cases, even if it is ultimately of less utility than a settled case outcome.[11]

I also have not previously given great weight to Respondent's citation to pain and suffering determinations from traditional tort system state court cases, noting that Congress intended the "no-fault" system established in the Vaccine Program to be generous. H.R. REP. NO. 99-908, at 12-13 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6353-54. Thus, Vaccine Program compensation will inherently be greater than what is awarded in civil actions elsewhere. Additionally, the descriptions of the traditional tort system cases proposed by Respondent often lack basic information needed for comparison. *Rafferty v. Sec'y of Health & Hum. Servs.*, No. 17-1906V, 2020 WL 3495956, at *18 (Fed. Cl. Spec. Mstr. May 21, 2020). As a result, "SIRVA awards in the Vaccine Program are self-evidently more relevant and apposite." *Id.*

Finally, I do not place much stock in Respondent's arguments that the pain and suffering component has become unreasonably inflated. If anything, the $250,000.00 cap itself acts to *limit* the amounts petitioners receive (given that it has not been raised in over 25 years). The *Graves* case counsels special masters to apply the cap only *after* pain and suffering is calculated (*Graves,* 109 Fed. Cl. at 590, 595) – a process that if rigidly applied in all cases would likely produce even *more* inflation than Respondent could live with. Giving weight to the fact of surgery, and pegging this factor loosely to a figure, allows special masters to calibrate the pain and suffering component within the $250,000.00 spectrum (but without also yielding awards in SRIVA cases that consistently exceed the cap).

---

[11] I also note that Respondent diminishes the persuasiveness of his assertion regarding the accuracy of proffered awards when (as in this case) he routinely suggests comparable cases then proposes a *lower* pain and suffering award. I understand generally that both sides have their own biases in the outcomes they favor; certainly petitioners have a clear motivation to seek greater pain and suffering awards. But since a proffer reflects *Respondent's* "take" on damages, the amount proffered in any given case is likely to be somewhat consistent with Respondent's goals of protecting the Vaccine Fund, as well as Respondent's larger inclination to favor lower awards. This again underscores why reasoned, non-partial decisions from the special masters are the best guidance in evaluating these kinds of questions.

8

### B. Specific Analysis

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing the analysis in this case, I review the record as a whole to include the medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A thorough review of the medical records reveals that Mr. Gray suffered a moderate to severe SIRVA injury for approximately eleven months, requiring 35 PT sessions and arthroscopic surgery. Although Petitioner often reported severe pain levels (*e.g.,* Exhibit 4 at 15), his February 21, 2020 MRI results seem to indicate a milder SIRVA injury (*Id.* at 10-11). Additionally, Petitioner initially delayed seeking medical treatment for approximately 52 days. Exhibit 2 at 112.

At his last post-surgical PT session on October 1, 2020, Petitioner reported small improvement and pain at a level of three. Exhibit 2 at 8. He was provided a home exercise program to help resolve the last of his decreased ROM – noted to be 80 percent. *Id.* at 9. It appears Petitioner has not pursued any further medical treatment.

Even though limited only to the severity of his pain, Petitioner's argument that *Hooper* provides a comparable case is not persuasive. The *Hooper* petitioner consistently reported severe levels of pain for two to three years – between five to ten out of ten, which resulted in significantly decreased ROM and a 50 percent permanent disability rating. *Hooper*, 2019 WL 1561519, at *2-4.

And, despite being a surgical case, *Shelton* involves a unique set of facts and circumstances, including an initial delay of five months before any complaint of pain and an additional three-month delay before further treatment was pursued. *Shelton,* 2021 WL 2550093, at *7. Thus, it does not provide helpful guidance in this case (or most other cases for that matter).

Although the remaining cases cited by the parties offer better comparisons, there are reasons why Petitioner's award should fall between these previously awarded amounts. The *Nute* petitioner reported pre-surgical pain that continued to increase after each of three administered cortisone injections. *Nute,* 2019 WL 6125008, at *2-3. And the

9

*Smith* petitioner underwent almost three times the amount of post-surgical PT. *Smith*, 2021 WL 2652688, at *4. Petitioner's pain and suffering both prior to and after surgery was less. Thus, his award should be lower than the $125,000.00 given to the *Nute* and *Smith* petitioners.

Likewise, the *Hunt* case proposed by Petitioner offers a good comparison but too low an award - $95,000.00. The *Hunt* petitioner obtained significant, but temporary, pain relief from two cortisone injections administered prior to surgery. *Hunt*, 2022 WL 2826662, at *8-9. Although Petitioner was offered (but declined) a steroid injection, this is not unexpected, given that his initial injury was caused by an injection. He did, however, take pain medication as prescribed at his first appointment on January 3rd, and he reported moderate to severe levels of pain prior to surgery.

Taking all of the above into account, I find that an appropriate award for Petitioner's past pain and suffering should fall between the awards given in the parties' proposed cases. Respondent has not justified his proposed amount of $72,500.00 which is more than $20,000.00 less than any of the prior awards which he references. Thus, the past pain and suffering award in this case clearly should be closer to the amount Petitioner proposes. Although there is not a particular prior case which involved facts and circumstances extremely comparable to the present matter, the cited cases involving awards of $110,000.00 offer the greatest parallels. In particular, *Guymon, Vaccaro,* and *Wilt* provide the most shared circumstances.[12] Thus, I find $110,000.00 is an appropriate past pain and suffering award.

I do not, however, include any component of damages for future pain and suffering. As I have previously stated, an award for *future* pain and suffering is appropriate "only for cases where a strong showing is made that the claimant has suffered a permanent disability, or there are other extenuating circumstances that justify inclusion of a future component." *Accetta v. Sec'y of Health & Human Servs.*, No. 17-1731V, 2021 WL 1718202, at *5 (Fed. Cl. Spec. Mstr. Mar. 31, 2021). In this case, Petitioner has not established that the sequela of her SIRVA continued beyond early 2019.

## VI. Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $110,00.00 represents a fair and appropriate amount of**

---

[12] *Guymon v. Sec'y of Health & Hum. Servs.*, No. 19-1411V, 2022 WL 1447006 (Fed. Cl. Spec. Mstr. Mar. 25, 2022); *Vaccaro v. Sec'y of Health & Hum. Servs.*, No. 19-1883V, 2022 WL 662550 (Fed. Cl. Spec. Mstr. Feb. 2, 2022); *Wilt v. Sec'y of Health & Hum. Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020).

10

**compensation for Petitioner's actual pain and suffering.**[13] **I also find that Petitioner is entitled to $2,556.68 in actual expenses. I do not find Petitioner is entitled to a future pain and suffering award.**

Based on the record as a whole and arguments of the parties, **I award a lump sum payment of $112,556.68, representing compensation in the amounts of $110,000.00 for his actual pain and suffering and $2,556.68 for her actual unreimbursable expenses in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[14]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[13] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.